**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIO ANTHONY DESHADER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GOURMET DINING SERVICES CORP., et al.,<br><br>　　　　　Defendants. | Civil Action No. 10-176 (MLC)<br><br>**O P I N I O N** |

**APPEARANCES:**

MARIO ANTHONY DESHADER, Plaintiff <u>Pro Se</u>
Monmouth County Correctional Institution
1 Waterworks Road, Freehold, New Jersey 07728

**COOPER**, District Judge

　　Plaintiff, Mario Anthony DeShader, a prisoner incarcerated at Monmouth County Correctional Institution ("MCCI"), seeks to bring this action <u>in forma pauperis</u> without prepayment of fees pursuant to 28 U.S.C. § 1915.[1]  Based on his affidavit of poverty, prison account statement and the apparent absence of three qualifying dismissals, pursuant to 28 U.S.C. § 1915(g), this Court will grant his application to proceed <u>in forma pauperis</u> and direct the Clerk to file the complaint without prepayment of the filing fee.  <u>See</u> 28 U.S.C. § 1915(a).  Having reviewed the allegations, this Court will dismiss the Complaint.

---

[1] This Court administratively terminated the action on January 15, 2010, because Plaintiff failed to either prepay the filing fee or apply for <u>in forma pauperis</u> status.

## I.  BACKGROUND

Plaintiff brings this action against Gourmet Dining Services Corp. and its manager, Correctional Care Solutions, the Warden, and five individual county freeholders.  Plaintiff asserts the following facts:

> Plaintiff/Petitioner entered into M.C.C.I. on or about June 4th 2008 and because of severe allergic reaction(s) to particular food(s), was placed on a diet tray per medical advice or orders.
>
> On or about October 18th 2009 at approximately 6:30 pm in the day space of I-2 housing pod for maximum security inmates, I had begun to eat the dinner meal tray (some kind of foreign meat) as I ate, I could not breathe or swallow.  I began to cough very violently and began struggling for my breath, several inmates including the unit officer, Officer Sicoli ran over to my table to assist me (see officer report).  I then began to regurgitate as what appears to have been food and obvious discolored fluid (blood) to the best of the Plaintiff/Petitioner knowledge.  After I caught my breath, Officer Sicoli asked what's wrong, what happened, I responded, "it felt like something was caught in my throat."  Under th supervision of Officer Sicoli, who observed and or witnessed the whole incident (see officer report) that I pulled out a small nugget size piece of metal (or metal chunk).
>
> Officer Sicoli took the "metal chunk" and called for the Unit Sergeant, Sergeant Betten.  I was escorted to medical by Officer Smith, my voice was dreadfully noticeably different, my face was beet red, and I was covered (my chest area) of vomit.
>
> Sergeant Betten arrived at the medical department and he and several other high ranking officers (brass) were there and several pictures of the "metal chunk object" were taken.
>
> A representative from Gourmet Dining Services was called to the medical department and told of what transpired.  Plaintiff/Petitioner did not witness anyone visually insert anything into his meal and Gourmet Dining Services states they do not prepare the food here at M.C.C.I.

> On October 18th 2009 and on the 19th, 20th, 21st, I the Plaintiff/Petitioner still having a hoarse of sounding voice complained to the medical department on the dates listed above, about my throat feeling irritable and scratchy also sore, the back of my throat is very, very red. I was told to gargle with warm salt water, for there is no reason for further treatment. I wrote a grievance for about it to the Warden of Monmouth County Correctional Institution but received no response (see attached).
>
> The petulanc[e] of the staff of M.C.C.I. and the[ir] contracted service providers are oblivious arrogant attitudes on clear display and quote. The attitudes, characters, and behaviors are displayed with clear perspicuousness, with complete disregard for formal procedures, policy, and legal authority to intervene seemed to have evolved into a fascist administration which gives hard bottom perspicuousness in procedural regulations codes and conduct(s) of the blue wall ("law enforcement") and their common interest and concerns.

(Compl., Factual Allegations, ¶¶ 17-23.)

Plaintiff asserts that defendants exposed him to a substantial risk of serious harm in violation of the Eighth and Fourteenth Amendments and violated his First Amendment rights by failing to respond to grievances.

## II.   STANDARD FOR DISMISSAL

The Court, prior to docketing or as soon as practicable after docketing, must review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A. The Court must sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief. Id. A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

A court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). But a court is not required to credit bald assertions or legal conclusions improperly alleged in the complaint. See Burlington Coat Fact. Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Therefore, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See Nice Sys., Ltd. Sec. Litig., 135 F.Supp.2d 551, 565 (D.N.J. 2001).

A litigant's pleading requirement has been recently clarified. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." Twombly, 127 S.Ct. at 1964-65 . . . ."[T]he threshold requirement of [Federal] Rule [of Civil Procedure] 8(a)(2) [is] that the 'plain statement [must] possess enough heft to sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3.

Phillips, 515 F.3d at 231-32 (original brackets removed).

4

This standard was further refined in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [, i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn [on] the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

Iqbal, 129 S.Ct. at 1949-54.

Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which was applied to federal complaints before

Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).[2]  Now, a district court must conduct a two-part analysis when reviewing a complaint for dismissal:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [See Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50 (emphasis supplied)].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Fowler, 578 F.3d at 210-11.

The Court must still construe the sufficiency of a pro se pleading liberally in the plaintiff's favor.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Thus, the Court will now determine whether the Complaint should be dismissed.

---

[2] Conley held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

### III.  DISCUSSION

To recover under 42 U.S.C. § 1983, a plaintiff must show: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).  Liberally construing Plaintiff's allegations, the complaint seeks damages and other relief under § 1983 for allowing a chunk of metal to be in his meal, failing to provide appropriate medical care, and failing to respond to grievances.

Plaintiff alleges that, while detained at MCCI on October 18, 2009, as he was eating a meal provided by MCCI, he began to violently cough because he felt something caught in his throat, and then he regurgitated items, including a chunk of metal that was inside the meat he had been served.  However, the failure to adequately secure food against a foreign object on one occasion constitutes negligence at most, and negligence is not actionable under § 1983.  See Davidson v. Cannon, 474 U.S. 344 (1986) (holding prison official's negligent failure to protect inmate from assault by another inmate because official "mistakenly believed that the situation was not particularly serious" does not state claim  under § 1983); Daniels v. Williams, 474 U.S. 327 (1986) (holding inmate who was injured when he slipped on pillow

negligently left on stairs by deputy sheriff does not state claim under § 1983). Plaintiff's § 1983 claim based on the presence of the chunk of metal in his food will be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff further alleges that, although his voice was hoarse and throat was sore for the next three days, Medical Department personnel prescribed no treatment beyond gargling with warm salt water.[3] In assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." Bell v. Wolfish, 441 U.S. 520, 538 (1979). That inquiry involves application of the Eighth Amendment deliberate indifference standard, insofar as "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)); see Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (holding "at a minimum the 'deliberate indifference' standard of Estelle v. Gamble, must be met"). "The standard

---

[3] Plaintiff does not indicate whether this treatment alleviated his symptoms after three days.

enunciated in Estelle is two-pronged: '[i]t requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.'"  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F. 2d 326, 346 (3d Cir. 1987) (citations omitted).  "To show deliberate indifference, a plaintiff must do more than simply allege medical malpractice or express disagreement regarding the treatment provided."  Watkins v. Cape May County Corr. Ctr., 240 Fed.Appx. 985, 986 (3d Cir. 2007).

   Plaintiff's medical care claim here fails to state a claim. A defendant in a civil rights action must participate in the alleged wrongdoing, and Plaintiff does not assert facts showing that any named defendant participated in violating his constitutional rights to medical care.  See Iqbal, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior").  Also, the facts alleged in the complaint do not show deliberate indifference; rather, Plaintiff's allegations show that he disagreed with the treatment - gargling with warm salt water - and such disagreement does not satisfy the deliberate

9

indifference standard. Accordingly, to the extent that Plaintiff seeks to assert a claim under § 1983 based on the failure to provide adequate medical care, this claim will be dismissed. But the Court will dismiss this claim without prejudice, as Plaintiff may be able to assert facts showing that a prison official was deliberately indifferent to his serious medical needs.

Plaintiff also alleges that the failure to properly respond to his grievances violates his constitutional rights. This Court construes these allegations as a claim under the Petition Clause of the First Amendment and/or the Due Process Clause of the Fourteenth Amendment. But "[p]risoners do not have a constitutional right to prison grievance procedures. Thus, defendants' alleged obstruction of such procedures is not independently actionable." Heleva v. Kramer, 214 Fed.Appx. 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)); Pressley v. Johnson, 268 Fed.Appx. 181, 184 (3d Cir. 2008) ("Pressley also complained about the investigation and processing of his inmate grievances. Because there is no due process right to a prison grievance procedure, Pressley's allegations did not give rise to a Fourteenth Amendment violation"); Stringer v. Bur. of Prisons, 145 Fed.Appx. 751, 753 (3d Cir. 2005).[4] Thus, defendants' alleged failure to properly

---

[4] See Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) ("Process is not an end in itself. Its constitutional purpose is
(continued...)

address and process Plaintiff's administrative remedies is not actionable under § 1983.

## IV.   CONCLUSION

The Court grants Plaintiff's application to proceed <u>in forma pauperis</u> and dismisses the Complaint.  The Court will issue an appropriate order and judgment.

<u>s/Mary L. Cooper</u><br>
**MARY L. COOPER**<br>
United States District Judge

Dated:   February 22, 2010

---

⁴(...continued)
to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . .  The [government] may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice [it] does not create an independent substantive right"); <u>Hewitt v. Helms</u>, 459 U.S. 460, 469 (1983) ("we have never held that statutes and regulations governing daily operation of a prison system conferred any liberty interest in and of themselves").

11